### ANTONIO COMELLA *vs.* GIUSEPPINA COMELLA.

JULY 24, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

See also 67 R. I. 348.

CAPOTOSTO, J. This is a bill in equity to establish complainant's title to an undivided half interest in certain real estate in the town of North Providence. After a hearing in

the superior court on bill, answer, replication and proof, the trial justice granted the relief prayed for in the bill, and thereafter a final decree was accordingly entered. The cause is before us on the respondent's appeal from that decree, the reasons of appeal being that the decree is against the law, the evidence and the weight thereof.

It appears in evidence that the parties are husband and wife. They were married in 1922, such marriage being a second marriage for both of them. The complainant had six children, and the respondent two children, all of whom were minors and not of working age until after 1928, in which year the transaction occurred that is of determinative force in this cause. No child was born of this marriage.

The evidence on the controlling issue before us is in serious conflict. The complainant and the respondent were the only witnesses. No documentary or other independent proof bearing on such issue was produced by either side. Therefore, as the cause was tried, the determination of the fundamental question in this cause rests entirely upon whether credence is given to the testimony of the complainant or to that of the respondent.

The testimony of the complainant, in substance, is as follows: He testified that, from 1922 to the fall of 1926, he worked as a cobbler for wages of $30 a week, all of which he turned over to his wife for current expenses and for such savings as she might make therefrom. In the latter year, he opened a cobbler shop and operated the same until about 1936, when, because of lack of business and illness, he closed the shop. Thereafter he was practically unemployed. During this entire period he gave his wife $50 a week regularly, as well as other profits from the business when possible, to be used by her on the same conditions as before 1926.

He further testified that shortly after their marriage, his wife, who did not work at any time thereafter, opened an account in their joint names in the Columbus Exchange Bank of Providence, in which account she deposited, from time to time, the savings from the money that he gave her.

In 1928, having had some trouble with his landlord on account of the children, he suggested to his wife that they buy some land and build a house with the money in the joint account. She first opposed this suggestion, but finally came to an agreement with him, which he relates as follows: "She don't want to buy a house. She wants to get the money. And I wanted to buy a house. I had enough to buy a house so my kids will have a home to do as they please. She says to me, 'You going to put the house in my name?' I says, 'Sure. Why not? You my wife. Your name and my name the same thing. Half for you and half for me.' "

Following this alleged agreement, they bought two lots of land in North Providence, for which they paid $1050 in cash, and some time later they built a house thereon. The title to these premises is the subject of dispute in this cause. The complainant positively testified that the lots were bought with money from the joint account in the Columbus Exchange Bank. It is clear from the evidence that up to July 20, 1928, which is the date of the deed to the respondent as sole grantee of the aforementioned lots, no earnings of the children of either party were deposited in the joint account.

The respondent's testimony is entirely different. She testified that the sum on deposit in the Columbus Exchange Bank stood in her name alone; that it was money which she had saved or received from various sources before her marriage to the complainant in 1922; and that she did not tell her husband about this bank deposit until she agreed to buy the lots. When asked, in cross-examination, the direct question as to whether she had a joint account with her husband in that bank and at that time, her answer was: "I don't ever *remember* of my husband's name being on the book because he never had any money." (italics ours)

Her testimony respecting the purchase of the lots in 1928, which she claims were bought with her money and not with joint funds, is as follows: "Q. When you and your husband decided to move or leave the Pistachia house did any conversation take place between you and your husband as to what

move you were going to make next? . . . A. When we both came to an agreement that we were going to move from that house I went out and I couldn't find a place. And I says to him, 'Shoemaker, what do you say we build a house?' Q. When you say 'Shoemaker' you mean your husband? A. I mean my husband. Q. What did he say to you at that time? A. He says, 'You want to build a house and where is the money?' Q. What did you have to say to him then? A. I told—my answer to him was this, 'I have the money. There is only one thing that I want to have an understanding is this, this house (meaning the deed to the land) must go in my name because it is my money.' . . . Q. When you told your husband you had the money to build the house what did he say? A. My husband says, 'Go ahead. You do it and you put your name on the instrument and you do it. The money is yours and you do as you want to.''

After the lots were bought, a house was built thereon at a cost of $4400, of which sum $1600 was paid in cash, and the balance of $2800 was raised by means of a first mortgage on the premises. The principal of this mortgage had been reduced to $360 by the time the instant cause was instituted in September 1939. The complainant testified that all payments on the house and mortgage were made with the savings from his earnings and the earnings of some of his children, while the respondent testified that all such payments were made with her own money and the earnings of the children of both.

The evidence is clear that the complainant allowed his wife to have complete control over his household and financial affairs at all times. Up to 1936, his contribution to the family was to earn a living by working at his trade. It is also clear that, subsequent to that time and before the filing of this suit, the respondent attempted to eject the complainant from their home, through divorce proceedings instituted by her, which, after hearing on the merits, were denied and dismissed by a justice of the superior court.

In the instant cause, the trial justice makes the following findings of fact, which, as he says in his rescript, are established to his satisfaction by clear and convincing evidence. First, that complainant and respondent did have a joint bank account in the Columbus Exchange Bank prior to July 20, 1928, the date of the deed to the lots here involved; second, that the money was put in that joint account by the respondent "upon the distinct understanding that she would hold them and invest them for the joint benefit of herself and her husband"; and third, that the money from such account was used to buy the lots and build the house. Upon these findings, he decided that the complainant was entitled to a one half interest as joint tenant in the whole of the premises in question, and therefore he ordered the respondent to execute, deliver and record a deed to him to that effect.

The language of the trial justice in his rescript clearly shows that he believed the complainant and did not believe the respondent. Having found as a fact that the lots, upon which the house was built, were bought with money from the joint account, and that the respondent took title thereto in her name alone with the understanding that such title was to be "half and half", as the complainant testified, he granted the complainant relief on the theory of a resulting trust to an aliquot part of the whole estate in accordance with the agreement which he found proven to his satisfaction. We find no error in his application of the law of resulting trusts to the fact as he found them. *Angell* v. *Angell,* 64 R. I. 264, and cases cited.

As to the facts, it is impossible for us to say, from the record before us, that the complainant is not to be believed merely because the respondent testified otherwise. There is nothing in complainant's testimony that is contradictory in itself, unbelievable, or inherently improbable. Since the conflicting testimony of the complainant and of the respondent was the only evidence before the trial justice, it was within his province to determine in the first instance

the credibility and weight of their respective testimony. In discharging this duty he had the advantage of seeing and hearing the parties testify, and he apparently applied the correct rule of law. In the peculiar circumstances, we cannot say that he was clearly wrong in giving full credence to complainant's testimony and in treating it as clear and convincing proof of the controlling issue in this cause.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Luigi Capasso, Ralph Rotondo,* for complainant.

*Aram A. Arabian, Benjamin Cianciarulo,* for respondent.